**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

WESCO INSURANCE COMPANY,       :
       :
       Plaintiff,       :
       :    Civil Action No.:
vs.       :
       :
CENTRAL FALLS DETENTION FACILITY    :
CORPORATION, WILDER ARBOLEDA,    :
GARY BERDUGO, JOSEPH MOLINA    :
FLYNN, HERMAN YIP, and UMB BANK,    :
N.A., as Trustee,    :
       Defendants.    :

## COMPLAINT FOR DECLARATORY JUDGMENT

Wesco Insurance Company ("Wesco"), by and through its counsel, and for its Complaint for Declaratory Judgment against the Defendants, Central Falls Detention Facility Corporation ("CFDFC"), Wilder Arboleda, Gary Berdugo, Joseph Molina Flynn, Herman Yip, and UMB Bank, N.A., as Trustee (the "Trustee"), alleges as follows:

## NATURE OF THE ACTION

1.    Wesco seeks a declaration that it does not owe a duty to defend or indemnify CFDFC or Wilder Arboleda, Gary Berdugo, Joseph Molina Flynn, and Herman Yip (collectively, the "Individual Defendants"), under a policy issued to CFDFC as the named insured, in connection with the Verified Petition For Appointment of Receiver and Complaint filed by the Trustee in the United States District Court for the District of Rhode Island, case no. 19-cv-00182-WES-PAS (the "Underlying Lawsuit").

## THE PARTIES

2.    Wesco is a Delaware corporation with its principal place of business in New York.

3.     On information and belief, CFDFC is a Rhode Island not-for-profit corporation with its principal place of business in Rhode Island.

4.     On information and belief, Wilder Arboleda is a citizen of Rhode Island.

5.     On information and belief, Gary Berdugo is a citizen of Rhode Island.

6.     On information and belief, Joseph Molina Flynn is a citizen of Rhode Island.

7.     On information and belief, Herman Yip is a citizen of Rhode Island.

8.     On information and belief, the Trustee is a national banking association with its main office located in Missouri, as set forth in its articles of association. The Trustee is named as a party herein because it may be a party in interest to the existence of insurance proceeds. Wesco seeks no relief from the Trustee other than to bind it to the outcome of this insurance coverage dispute.

## STATEMENT OF JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Wesco and the Defendants, and the amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of interest and costs. The Underlying Lawsuit seeks damages from CFDFC and the Individual Defendants in an amount in excess of $75,000. In addition to the damages sought, Wesco is also being asked to provide a defense to the CFDFC and the Individual Defendants.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 because a majority of the Defendants reside in this judicial district and a substantial part of the events giving rise to this litigation occurred in this judicial district.

## FACTUAL BACKGROUND

11.     On April 10, 2019, the Trustee, in its capacity as the successor indenture trustee for the Central Falls Detention Facility Corporation Detention Facility Revenue Refunding Bonds (The Donald W. Wyatt Detention Facility) Series 2005A issued by CFDFC (the "Bonds"), filed the Underlying Lawsuit against CFDFC, the Individual Defendants, who are alleged to be current members of CFDFC's board of directors, and others. (A copy of the Underlying Lawsuit is attached as Exhibit A.)

12.     The Underlying Lawsuit alleges that the Trustee represents the holders of the Bonds, which are owed over $130 million. The Trustee seeks to recover damages in the amount of the bond debt. The Trustee also seeks a temporary restraining order and the appointment of a receiver to prevent the City of Central Falls (the "City"), its officials, and CFDFC's board from closing the Donald F. Wyatt Detention Facility (the "Facility"), because payments due on the Bonds are funded by revenues generated from the Facility's operations. The Trustee contends that the closure of the Facility would result in CFDFC defaulting on its repayment obligations under the Bonds. According to the Underlying Lawsuit, despite the Trustee holding a senior secured creditor position and first priority liens against all of CFDFC's assets, the value of the collateral pledged by CFDFC in connection with the issuance of the Bonds is less than the amount owed to the Trustee and bondholders on the Bonds, and therefore, a closure of the Facility would result in immediate and irreparable injury to the Trustee and bondholders.

13.     The Underlying Lawsuit contends that CFDFC issued the Bonds in 2005 in order to fund an expansion of the Facility in order to accommodate the increased demand from the federal government for detainee space. In connection with the issuance of the Bonds, CFDFC and the predecessor trustee, US Bank, NA, entered into an Indenture of Trust (the "Indenture"),

wherein CFDFC promised to make regularly scheduled payments of principal and interest on the Bonds from the revenues generated by CFDFC from the Facility's operations. The parties also allegedly entered into an Open-End Mortgage, Deed, Leasehold Mortgage and Security Agreement, dated June 30, 2005, as further security for CFDFC's obligations under the Indenture (the "Mortgage").

14.     The Underlying Lawsuit contends that the Trustee is the senior secured creditor of CFDFC and holds a first priority security interest in, and liens against, all of CFDFC's assets including its revenue, accounts and real property, and that a closure of the Facility and the cancellation of CFDFC's contracts with the United States Marshals Services ("USMS") and the U.S. Immigration and Customs Enforcement ("ICE") would cause immediate waste of the collateral underlying the Bonds.

15.     The Underlying Lawsuit alleges that in 1993, CFDFC and the USMS entered into an Intergovernmental Service Agreement, which was replaced in 2018. The Underlying Lawsuit alleges that on January 9, 2019, CFDFC signed a Modification of Intergovernmental Agreement that expanded the government's use of the Facility to include ICE.

16.     The Underlying Lawsuit contends that starting in 2014, the City began taking actions to extract funds from the Trustee's collateral in order to pay "local impact fees" to the City and re-prioritize payments to the City ahead of the bondholders. The Underlying Lawsuit asserts that the Indenture sets forth an express order of priority for use of revenues generated by CFDFC, and to the extent there is sufficient revenue after the payment of CFDFC's operating expenses, CFDFC is required to pay its debt service obligations on the Bonds, *i.e.*, the required principal and interest payments on the Bonds. The Trustee contends that only after making the debt service payments may CFDFC use any excess revenue to pay the City's local impact fees.

The Underlying Lawsuit contends that since 2009, CFDFC has not had sufficient funds from revenues to pay local impact fees to the City.

17.     The Underlying Lawsuit further alleges that starting in 2009, CFDFC began to default on its obligations under the Indenture, however, the Trustee did not exercise its remedies as CFDFC's senior secured creditor.

18.     The Underlying Lawsuit asserts that CFDFC, the Trustee, and the City subsequently entered into a Forbearance Agreement, which was subsequently amended several times to reflect additional funds advanced by the Trustee to CFDFC for capital improvements and operational expenses. Under the Forbearance Agreement, the Trustee agreed to forbear from exercising its rights under the Bonds in connection with CFDFC's default for up to four years.

19.     The Underlying Lawsuit alleges that upon learning of the Third Amendment to the Forbearance Agreement, the City began its attempts to shut down the Facility and impair the Trustee's rights under the Bonds, including passing two resolutions in April 2019 aimed at ultimately terminating CFDFC's existence, shepherding proposed State legislation aimed at taxing and dissolving CFDFC, and improperly directing and/or influencing CFDFC's board to suspend and possibly terminate CFDFC's contract with the USMS and ICE, which was CFDFC's primary revenue generating contract.  The Underlying Lawsuit alleges that eliminating CFDFC's tax exempt status, suspending CFDFC's contract with USMS, and dissolving CFDFC would eliminate the revenues that CFDFC pledged to repay the bond debt and would irreparably harm the Trustee's and security interest in, and lien on, the Bonds.

20.     The Underlying Lawsuit contends that CFDFC has been operating with a board of directors that has been acting in furtherance of the mayor's directives, rather than in furtherance

of the interests of CFDFC or its creditors, and that the actions of the board and the City and its officials have hindered CFDFC's ability to satisfy its repayment obligations to the Trustee.

21.     The Underlying Lawsuit asserts claims for breach of the Detention Center Act, breach of the Indenture, breach of the Mortgage, breach of the contract with USMS, tortious interference with the Indenture, the Mortgage, and the contract with USMS, and breach of fiduciary duty. The Underlying Lawsuit seeks the appointment of a receiver to take possession of the collateral underlying the Bonds, an order requiring CFDFC to continue its performance of the contract with USMS, and damages of not less than $130 million.

## THE POLICY

22.     Wesco issued CFDFC a claims-made policy for the period August 1, 2018 to August 1, 2019, policy number EUW1418920 02 (the "Policy"). The Policy includes a Directors and Officers and Private Company Liability Coverage Element (the "D&O Section"). The Policy contains limits of $1,000,000 per claim under the D&O Section. (A copy of the Policy is attached as Exhibit B.)

23.     The D&O Section's Insuring Agreements provide as follows:

Coverage A: **Individual Insurance Coverage**

The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

Coverage B: **Company Reimbursement Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period**,** if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss.**

Coverage C: **Company Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any actual or alleged **Wrongful Act** of a **Company**.

24.     The D&O Section contains the following definitions:

K.      **Loss** means

      1.      the amount that any Insured becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

            (i)      judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and

            (ii)     damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

      2.      **Defense Costs**…

**Loss** shall not include, other than **Defense Costs**:…

      2.      matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed…

      5.      the costs and expenses of complying with any injunctive relief or other form of nonmonetary relief;…

25.     The D&O Section contains the following exclusions:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.      alleging, arising out of, based upon or attributable to:

      1.      gaining of any profit, remuneration or advantage to which the **Insured** was not legally entitled, as established in any final adjudication;…

      4.      committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed. For purposes of determining the applicability of this Exclusion, (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** or the signatory of the **Application** shall be imputed to such **Company;**…

O.      with respect to Coverage C of this **Coverage Element** only**:…**

 3.      alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement. This Exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;…

 7.      seeking fines, penalties or non-monetary relief against the **Company**. This Exclusion shall not apply to any **Securities Claim**.

26.      Endorsement No. 3 of the Policy provides as follows:

The coverage afforded by this policy shall not apply to:

Any public official or any director or officer of the **Named Insured** in their capacity as a public official for the city of Central Falls and or State of Rhode Island.

27.      Endorsement No. 7 of the Policy provides as follows:

The coverage afforded by this policy shall not apply to any Claim(s) brought by or on behalf of any creditor or group or committee of creditors ("Creditor") Including without limitation an assignee, transferee, subrogee, successor in interest, conservator, trustee, liquidator or receiver of a Creditor.

<u>**COUNT I**</u>
**No Duty to Defend or Indemnify CFDFC or the Individual Defendants**

28.      Wesco realleges and incorporate paragraphs 1 through 27 as if fully set forth herein.

29.      Coverage A of the Policy applies subject to its terms to Loss of an Individual Insured arising from a Claim first made during the Policy Period for any Wrongful Act of the Individual Insured. Coverage B applies subject to its terms to Loss of the Company arising from a Claim first made against an Individual Insured during the Policy Period for any Wrongful Act of the Individual Insured, to the extent that the Company has indemnified the Individual Insured for such Loss. Coverage C applies subject to its terms to Loss of a Company arising from a Claim first made during the Policy Period for any Wrongful Act of the Company.

30.      To the extent any requirements of Coverage A, Coverage B or Coverage C are not satisfied, no coverage is afforded by the Policy.

31.     There is no coverage for any amount or relief that does not fall within the Policy's definitions of Loss and Defense Costs. Specifically, the Policy does not provide coverage for the costs to comply with the injunctive relief and other nonmonetary relief sought by the Trustee.

32.     The Creditor Exclusion contained in Endorsement No. 7 precludes coverage for any "Claim(s) brought by or on behalf of any creditor or group or committee of creditors ('Creditor') including without limitation an assignee, transferee, subrogee, successor in interest, conservator, trustee, liquidator or receiver of a Creditor".

33.     The Complaint is brought by the Trustee as a representative of holders of Bonds issued by CFDFC, and alleges that CFDFC and the Individual Defendants' conduct has impaired the Trustee's rights under the Bonds and its status as a senior creditor of CFDFC. The Trustee is seeking to prevent CFDFC and the Individual Defendants from taking actions that would further impact CFDFC's ability to pay the principal and interest on the Bonds.

34.     The Trustee and the bondholders are Creditors within the meaning of the Creditor Exclusion. Accordingly, the Creditor Exclusion precludes coverage for the Underlying Lawsuit.

35.     Under Exclusion A.1. of the D&O Section, there is no coverage for any Claim alleging, arising out of, based upon or attributable to the gaining of any profit, remuneration or advantage to which an Insured was not legally entitled, as established in any final adjudication.

36.     Under Exclusion A.4. of the D&O Section, there is no coverage for any Claim alleging, arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, as established in any final adjudication.

37.     Under Exclusion O.3. of the D&O Section, coverage for CFDFC is precluded under Coverage C for the Underlying Lawsuit's claims for breach of the Indenture, Mortgage, and contract with USMS.

38.     Under Exclusion O.7. of the D&O Section, coverage is precluded under Coverage C for the non-monetary relief, including the injunctive relief, sought by the Trustee against CFDFC.

39.     Pursuant to Endorsement No. 3, the Policy does not apply to the extent that the Underlying Lawsuit asserts allegations against the Individual Defendants in their capacity as public officials for the City of Central Falls and or State of Rhode Island.

WHEREFORE, Wesco Insurance Company respectfully requests that this Court enter judgment in its favor and against all Defendants declaring that Wesco Insurance Company has no duty to defend or indemnify Central Falls Detention Facility Corporation, Wilder Arboleda, Gary Berdugo, Joseph Molina Flynn, or Herman Yip, under policy number EUW1418920 02, in connection with the lawsuit filed by UMB Bank, N.A., as Trustee, case no. 19-cv-00182-WES-PAS, and awarding such other and further relief as the Court finds just and proper.

Dated:  June 18, 2019

PLAINTIFF
WESCO INSURANCE COMPANY,
BY ITS ATTORNEYS

LOCAL COUNSEL:

/s/ David W. Zizik
David W. Zizik (RI #2323)
Sulloway & Hollis, P.L.L.C.
40 Westminster Street, Suite 201
Providence, RI 02903
Phone: (401) 421-1238
Fax: (781) 658-2532
dzizik@sulloway.com

LEAD COUNSEL
(PRO HAC VICE MOTION TO BE FILED):

/s/ Philip R. King
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Phone: (312) 474-7950
Fax: (312) 878-2007
pking@cozen.com